

FILED

4:58 pm, 9/2/25

U.S. Magistrate Judge

# In the United States District Court
# for the District of Wyoming

UNITED STATES OF AMERICA,

       **Plaintiff,**

  **vs.**

MICHELINO P. SUNSERI,

       **Defendant,**

**Case No. 24-PO-00893-SAH-1**

---

## ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

This matter is before the Court on the Defendant's Motion for Judgment of Acquittal. (ECF No. 64.) For the following reasons, the Court **DENIES** the Defendant's Motion for Judgment of Acquittal.

## I.

On May 20, 2025, a two-day bench trial commenced against the Defendant. The Government presented its case-in-chief, and the Defendant did the same. The evidence closed, and the Court took the matter under advisement. At the bench trial, the Defendant did not move for a judgment of acquittal after either the close of the Government's case nor at the close of all the evidence. Twenty-six days after the end of his bench trial, on June 16, 2025, the Defendant filed this Motion for a Judgment of Acquittal (ECF No. 64) pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The Government filed its response (ECF No. 67), and the Defendant filed his reply. (ECF No. 68.)

In the Defendant's motion, he sets forth the Court's standard of review: could a reasonable jury have found the Defendant guilty beyond a reasonable doubt, when taking the evidence in the light most favorable to the Government. As background for this motion, the Defendant cites some

evidence that was presented at trial and also cites evidence that was not properly admitted for the Court's consideration. This information came as exhibits to other motions without any proper foundation or information. The Defendant offered no authority showing that this Court can consider any information that was not presented at trial, and the Court declines to do so. This information is entirely inappropriate in this type of motion.

Next in his motion, the Defendant proffers multiple grounds – some of which are the same as his contentions in his closing argument at trial and in his Motion for Hearing. (ECF No. 54.)[1] The Defendant claims the restriction in the 2024 Grand Teton National Park ("GTNP") Superintendent's Compendium ("2024 Superintendent's Compendium" or "2024 Compendium") is invalid under 36 Code of Federal Regulation § 2.1(b) because the Old Climber's Trail was an established trail and that the notice provided was confusing. Additionally, he argues that the restriction did not comply with 36 Code of Federal Regulations §§ 1.5 and 1.7 as required. The Defendant made this argument at trial, and this is addressed in the Court's Findings of Fact and Conclusions of Law. Therefore, the Court declines to address this issue again here.

The Defendant next claims that the restrictions in the 2024 Superintendent's Compendium are void under the Appointments Clause of the United States Constitution. This is the first time the Defendant has raised this argument. While it would have been more appropriate to bring as a pretrial motion, the Court will consider this argument.

The Defendant asserts that the 2024 Compendium is a significant exercise of federal authority that can only be wielded by an Officer of the United States duly appointed in accordance

---

[1] The Defendant has frequently made the same legal argument in multiple motions and at trial. This makes it difficult for the Court to respond because the legal grounds and arguments are generally the same. He then repeats them in closing argument, motion for hearing, motion for acquittal, etc. The Court will respond to each argument one time.

with the Constitution. This makes the Superintendent an Officer, and since the Superintendent of Grand Teton National Park was not duly appointed, this makes his restrictions in the 2024 Compendium void. By contrast, the Government argues that the Superintendent does not exercise the significant authority envisioned by the Appointments Clause and therefore he need not be appointed, which keeps the restrictions in the 2024 Compendium valid and enforceable.

Defendant then presents arguments that the rules in the Code of Federal Regulations under Title 36 are an invalid delegation of authority from Congress to the Department of Interior and National Park Service, an issue the Defendant previously raised pretrial. He also asserts his Due Process rights were violated again referring to the lack of notice, and other grounds of selective enforcement and prosecution and vindictive prosecution.

The Court will address each of these in turn.

## II.

### A. <u>Legal Standards and Law Applicable Rule 29 Motions</u>

Rule 29 of the Federal Rules of Criminal Procedure allows a defendant to move for a judgment of acquittal based upon insufficient evidence at multiple stages in a trial including at the close of the Government's evidence or prior to submission of the case to the jury, or even after a verdict has been returned. Fed. R. Crim. P. 29(a), (c). A court may rule on the motion at the time it is made or reserve ruling until after the case is submitted to the jury and decide the motion either before or after the jury renders a verdict. Fed. R. Crim. P. 29(b).

The purpose of Rule 29 is to "protect a defendant 'against an improper or irrational verdict of the jury.'" *United States v. Grace*, 367 F.3d 29, 34 (1st Cir. 2004). It allows a judge to issue a not guilty verdict when a jury may "capriciously find [the defendant] guilty though there is no legally sufficient evidence of guilt." *Id*. The rule functions somewhat differently for a bench trial.

*Id.* ("It is odd to suggest that trial judges must be given the opportunity with a Rule 29 motion to protect themselves from their own capriciousness.")

The motion, if made at the close of the prosecution's evidence, gives a court an opportunity to end the trial at that stage if, when taking the evidence in the light most favorable to the government, the court decides the government has failed to meet its burden. This alleviates the defense of having to decide whether to put on evidence. Such a motion was not made in this case.

The standard under Rule 29 is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In considering the motion, the court should not "weigh conflicting evidence or consider the credibility of the witnesses, but simply 'determine whether [the] evidence, if believed, would establish each element of the crime." *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir. 2001) (citations omitted). This is a deferential standard. *United Sates v. Aguilar*, No. CR 21-0670 JB, 2024 WL 3401090, at *8 (D.N.M. July 12, 2024). If a motion for judgment of acquittal is denied at the end of the government's case, or not made at all, and a defendant chooses to put on evidence, then the court reviews the entire record rather than consider only the prosecution's evidence. *United States v. Uribe*, 363 F.3d 1077, 1082 (10th Cir. 2004).

In this case, the Court is sitting as the trier of fact and has heard all the evidence in this matter. The Defendant did not move for a judgment of acquittal at the end of the Government's case, nor did it move for one at the close of the evidence. Instead, the Defendant waited twenty-six days after the close of the evidence to submit this motion.

As the trier of fact, the Court applied the appropriate standard for a criminal conviction, the standard of beyond a reasonable doubt, when determining the Findings of Facts and Conclusions of Law. (ECF No. 75.) This standard is more rigorous than the standard applied in a

motion for judgement of acquittal. By applying the beyond a reasonable doubt standard to reach a verdict, the Court considered the evidence presented, weighed the credibility of the witnesses and weighed any conflicting evidence.

Since the Court has already used the more rigorous standard, deploying the lesser deferential standard seems superfluous. Accordingly, for the Defendant's arguments in this motion by reason of insufficiency of the evidence, the Court denies the Motion for Judgment of Acquittal and defers to its Findings of Facts and Conclusions of Law.

**B.  Law Relating to the Charges: Title 36 of the Code of Federal Regulations**

Title 36 of the Code of Federal Regulations comprises the rules promulgated by the Secretary of the Interior with the National Park Service for the country's national parks. The regulations provide the Superintendent with authority to enforce certain restrictions as deemed necessary and to compile all restrictions in a single compendium that is updated annually. *See* 36 C.F.R. §§ 1.5(a)-(f), 1.7(b).

Within these rules is 36 C.F.R. § 2.1(b), which provides that "[t]he superintendent may restrict hiking or pedestrian use to a designated trail or walkway system pursuant to sections 1.5 and 1.7. Leaving a trail or walkway to shortcut between portions of the same trail or walkway, or to shortcut to an adjacent trail or walkway in violation of designated restrictions is prohibited." Under this rule, Superintendent Palmer Jenkins issued the following restriction in the 2024 GTNP Superintendent's Compendium:

**§2.1(b) Restriction for hiking or pedestrian use to designated trail or walkway systems**

- Foot travel is restricted to designated trails and walkway systems when traveling through signed revegetation and restoration areas
- Short cutting a switchback along a trail is prohibited

*The Superintendent has determined revegetation and restoration efforts are an important function of the NPS. Revegetation and restoration returns an area to an acceptable native vegetation state after a certain event or use caused unacceptable resource impacts. To successfully restore a park area to a native vegetation state takes significant planning and effort for NPS staff. The Superintendent has determined this restriction is necessary and the least restrictive means to prevent further unacceptable resource impacts and provide an opportunity for successful revegetation and restoration attempts.*

With that, the Court turns to the Defendant's arguments.

## III.

### A. The Government Proved Beyond A Reasonable Doubt that Notice and Written Determination were Valid Under 36 C.F.R. §§ 1.5 and 1.7.

First the Defendant argues, as he did in his pretrial motions and closing arguments, that the restrictions on shortcutting in the 2024 Compendium were not valid because it did not comply with the notice requirement under 36 C.F.R. § 1.7 and that the written determination was insufficient under 36 C.F.R. § 1.5(b). As previously addressed in this Court's Findings of Facts and Conclusions of Law, this restriction was promulgated pursuant to 36 C.F.R. §§ 1.5 and 1.7 and the notice and written determination were proven to be sufficient by the Government beyond a reasonable doubt. (*See* ECF No. 75 for further explanation.)

### B. The Grand Teton National Park Superintendent is Not Subject to the Appointments Clause in Article II, § 2 of the United States Constitution.

The Defendant next argues that the restrictions in the 2024 Superintendent's Compendium are void because the restrictions are an exercise of significant federal authority which can only be wielded by an Officer of the United States properly appointed under the Appointments Clause of the Constitution. The Defendant contends that the Superintendent exercises significant federal authority, has minimal to no supervision, and is a continuing position which makes the Superintendent a principal Officer. Also, the Defendant claims, that since the record does not

support that the Superintendent was nominated by the President with consent of the Senate, his wielding of such authority is unauthorized and void.

Then the Defendant argues that even if the Superintendent is not a Principal Officer he is an inferior officer and must still be appointed pursuant to the Appointments Clause because no law authorizes the President, a department head, or a court to appoint the Superintendent. So again, the wielding of the significant authority was unauthorized, and the 2024 Superintendent's Compendium is void.

Alternatively, the Government argues that the GTNP Superintendent does not exercise significant authority, so he is not an Officer of the United States, merely an employee, and therefore need not be appointed pursuant to the requirements of the Appointments Clause which means his actions are proper and enforceable.

       *1.*   *The Appointments Clause.*

The Appointments Clause is found in article II, § 2 of the United States Constitution. It prescribes how "Officers of the United States" are to be appointed:

> [The President] shall have the Power, by and with the Advice and Consent of the Senate, … [to] appoint … Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."

U.S. Const. art. II, § 2, cl. 2.

The Appointments Clause serves as one of the "significant structural safeguards in our constitutional scheme." *Edmond v. United States*, 520 U.S. 651, 659 (1997) (Scalia, J.). The purpose is so that the President and other Heads in the Executive Branch have a central role in selecting other individuals who will "assist in exercising the 'executive Power.'" *Kennedy v. Braidwood Mgmt.*, 606 U.S. ___, 145 S.Ct. 2427, 2442 (2025) (citing U.S. Const. art. II, §1, cl.

1). This is crucial and necessary to maintain the separation of powers between the executive and judiciary branches of government. *Id.*

Officers' positions are generally created by statute and include the duties, salaries and means of the appointment. *Lucia v. SEC*, 585 U.S. 237, 248 (2018). An Officer is also an individual that exercises significant authority pursuant to the laws of the United States. It is this significant authority that marks the line between officers and nonofficers. *Edmond*, 520 U.S. at 662.

In *Buckley vs. Valeo*, the Court held that the "Constitution … clearly divides all officers into two classes." 424 U.S. 1, 125 (1976). Principal officers must be appointed by the President "with the Advice and Consent of the Senate," meanwhile the appointment power of "inferior officers" may be vested in "the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. On the other hand, an appointee that does not wield significant authority is merely an employee, and if an individual is only an employee "the Appointments Clause cares not a whit about who named them." *See Lucia*, 585 U.S. at 246-47 (quoting *United States v. Germaine*, 99 U.S. 508, 510 (1879)).

Along with significant authority, the *Morrison* Court detailed factors to be considered when determining whether an officer is a principal or inferior officer: (1) if an individual can be removed by a higher official (or said differently, is under a superior officer or individual), (2) whether the position can "perform only certain, limited duties," and lastly (3) the extent the office's jurisdiction and tenure are limited. *Morrison v. Olson*, 487 U.S. 654, 671-72 (1988). Under *Lucia*, a party must show that an individual is an officer (principal/inferior) and then demonstrate the individual was not properly appointed. *Lucia*, 585 U.S. at 247.

The question is whether the GTNP Superintendent is an officer (principal or inferior) who must be appointed pursuant to the Appointments Clause of the Constitution.

## 2. *The Superintendent is not an Officer of the United States.*

The Defendant argues that the Superintendent wields significant federal authority because he "manages all aspects of Grand Teton National Park" and regulatory authority via the Compendium, that his actions are not reviewable by superior authority and that the Superintendent is a continuing position. As stated above, the dividing line between an officer and a non-officer is whether the individual is "exercising significant authority." *Buckley*, 424 U.S. at 126. The Defendant contends that the 2024 Superintendent's Compendium is equal to final regulatory authority because he can determine what is and is not a criminal violation and thus the restrictions in the 2024 Compendium are akin to rulemaking under the Administrative Procedure Act making those powers significant authority. The Court is not persuaded.

In *Morrison*, that official possessed "a degree of independent discretion to exercise the powers delegated to her under the [Ethics in Government] Act," had limited duties prescribed by the Act which allowed the official "independent authority to exercise all investigative and prosecutorial functions," but because the official was not creating Government or Executive Branch policy, the Court found she was not a principal officer that wields significant authority. *Morrison*, 487 U.S. 671-73.

Here, the same can be said for the Superintendent. Some of a superintendent's duties and authority are conferred upon a superintendent by the Code of Federal Regulations, specifically Title 36 and these duties are also limited in scope to an individual superintendent's specific national park, in this case to Grand Teton National Park. These regulations vest the Superintendent with some authority to exercise a degree of discretion when proclaiming, for example, a closure due to a wildfire, or for wildlife protection, or for revegetation; but this does not mean that he wields significant authority.

The Court finds that this "wield of power" is not significant because it is limited by federal regulations and physical GTNP boundaries. It is important for the Superintendent to have some discretion to manage the rapidly changing and emergent conditions of GTNP based upon his intimate knowledge of the needs and conditions of the Park. And it is critical for the Superintendent to have the authority to enforce these closures, restrictions and prohibitions for the safety of the public and "to conserve the scenery, natural and historic objects, and wild life in the System units and to provide for the enjoyment of the scenery, natural and historic objects, and wild life in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." 54 U.S.C. § 100101(a).

What is more, the Superintendent is not creating policy for the Government or for the Executive Branch and does not hold any prosecutorial or adjudicative powers. As exhibited in *Public Employees v. NPS*, directors set the policy of the National Park Service that superintendents put in an annual compendium and have the authority to enforce through a law enforcement staff. *Pub. Emp. For Env't Resp. v. NPS*, 605 F.Supp.3d 28 (D.D.C. 2022) ("*Public Employees*"). In that case, the issue was the fact that electric bikes were appearing in national parks at a higher frequency than in the past. *Id.* at 35. Deputy directors put out directives and memoranda ordering the park superintendents to update their compendiums to comply with the policy. *Id.* This example shows that a superintendent does not wield significant authority because a superintendent must take directions for park management from superiors who are properly appointed.

The Defendant also argues that the superintendent was created by statute and cites to 36 C.F.R. § 1.4 This section of the regulations is titled, "What terms do I need to know?" and merely provides definitions of terms for visitors used throughout the rest of the regulations. The section does not "create" the superintendent's position. It does  not detail any of the duties, salary nor the

means of appointment which are generally prescribed in the statute as true with other Officers. *See Lucia*, 585 U.S. at 248. This shows that the position of superintendent is not created by statute and cuts against finding the GTNP Superintendent to be an Officer.

Most of the case law in this area applies to circumstances where the individuals that are considers Officers have adjudicative, regulatory, or investigatory powers. *See, e.g.*, *Buckley v. Valeo*, 424 U.S. 1 (1976) (Federal Elections Commission with investigate, regulatory, adjudicative, and enforcement powers); *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868 (1991) (special trial judges appointed by the U.S. Tax investigate, adjudicative, and other like powers); *United States v. Ryder*, 515 U.S. 177 (1995) (appellate judges on the Court of Military Review); *Lucia v. SEC*, 585 U.S. 237 (2018) (SEC Administrative Law Judges); *United States v. Arthrex, Inc.*, 594 U.S. 1 (2021) (Administrative Patent Judges).

These cases make it clear that an individual who has the power to regulate, investigate, and exercise quasi-judicial powers wields significant authority and must be appointed pursuant to the Appointments Clause. The facts of these cases are not particularly analogous to the superintendent of a park and a compendium: the GTNP Superintendent does have not the ability to prosecute, nor the ability to hear a case, render any judgment or impose any sentence.

Accordingly, the Court finds for these reasons that the GTNP Superintendent is not an Officer of the United States.

### 3.    *The GTNP Superintendent is not a Principal Officer.*

Even if the Court could find that the GTNP Superintendent is an Officer of the United States, he is most definitely not a principal officer. The Defendant claims that the GTNP Superintendent's actions are unreviewable by anyone and that he is not supervised by anyone, which makes him a principal officer. This assertion, however, flies in the face of the facts.

As stated above, officers' positions are generally creatures of Congress. The Department of the Interior and the position of Secretary of the Interior were created by Congress as codified in 43 U.S.C. § 1451. The statutes relating to the Department provide for the appointment of the Deputy Secretary, assistant secretaries, additional assistant secretaries, and a solicitor. *See Id.* §§ 1451, *et seq*. All of these positions are appointed by the President with advice and consent of the Senate. These statutes also set forth the duties and compensation of many of these offices. One of the duties of the Secretary is the supervision of public business relating to the National Park Service. *Id*. § 1457(11).

Congress then vested authority in the Secretary of the Interior to create the National Park Service. 54 U.S.C. § 100101(a) (amending 16 U.S.C. § 1 and 100301). The purpose of the NPS is to "conserve the scenery, natural and historic objects, and wild life in the [parks] and to provide for the enjoyment of" these things "in a manner to preserve them for future generations." *Id.* § 100101(a). Congress prescribed that the Director is to be appointed by the President and confirmed by the Senate and set forth some of the qualifications and duties of the Director including the "supervision, management, and control" of the national parks. *Id*. § 100302(a)(1)-(3). Congress also authorized two deputy directors to be selected by the Director and allows for other "subordinate officers and employees as appropriated for by Congress." *Id*. § 100302(b)(c). No other officers are set forth by Congress in the NPS statutes, including park superintendents.

Further, the structure of the NPS debunks the Defendant's theory that the Superintendent has no supervision above him. As shown in *Public Employees*, directors and secretaries issued directives and memoranda to superintendents that set policy and ordered them to update the compendiums. *Public Employees*, 605 F.Supp.3d at 35. That demonstrates how the national park superintendents are subject to higher authority.

12

The organizational chart also shows this fact: under the Deputy Director there are multiple associate directors and regional directors. Grand Teton National Park is in Region 7 of the Intermountain Region. (ECF No. 67-1); Org. Chart, *What We Do* NATIONAL PARK SERVICE, https://www.nps.gov/orgs/1072/whatwedo.htm/index.htm (last visited Aug. 25, 2025). The Office of Regional Director has two deputies that "oversee all park superintendents," and this clearly includes GTNP's Superintendent. The foregoing shows that the Superintendent has at least four superior layers of supervision ultimately ending with the Director of the Park Service and the Secretary of the Interior.

In sum, the statutory and organizational structures clearly demonstrate that a national park superintendent is subject to higher authority. Congress clearly vested the authority in a director to appoint "subordinate officers," such as Regional Directors who have deputy directors that "oversee all national parks," including GTNP. The logical conclusion is that the Superintendent is removable by his superiors within the NPS and Department of Interior. Accordingly, this factor weighs against finding that the GTNP Superintendent is a principal officer subject to the Appointments Clause.

Regarding the duties of the GTNP Superintendent, the Court addressed how those duties are not adjudicative, nor regulatory, and are limited by the Code of Federal Regulations above. In short, this factor weighs against a finding that the GTNP Superintendent is a principal officer.

Next, the Defendant argues that the length and continuous tenure of the Superintendent's position makes him a principal officer. When considering the other factors like the Superintendent is under many layers within the executive branch and subject to review, his duties are not judicial-like and limited to those prescribed within the Code of Federal Regulations, and his authority to restrict certain areas from the public is not significant authority but instead limited by the

regulations and by the Park's physical boundaries, the fact that the Superintendent may remain in his position until he wishes or until one of his superiors removes him, does not make him a principal officer.

And finally, the Defendant seems to imply that the Superintendent's appointment is an element the Government must prove at trial. The Court disagrees. This is not an element of the crime itself; this argument is an attack on the legality of the restriction. As such, the Court disregards this argument.

For all of those reasons, the Court finds the Superintendent of GTNP is not a Principal Officer subject to the Appointments Clause of the United States.

### 4. *The Superintendent is Not an Inferior Officer.*

In a final argument regarding the Appointments Clause, the Defendant states that Superintendent Jenkins is at least an inferior officer and is subject to the constitutional requirements because the default mechanism for an inferior officer is to be appointed in accordance with the Appointments Clause. The Defendant spent much of his motion proving that the Superintendent was not appointed by the President with the Senate's consent, and the Court agrees that this appears to be the case. But what the Defendant has failed to show is that it was *necessary* for the Superintendent to be appointed by the President as a principal, or as an inferior officer through the default manner of the Appointments Clause.

Instead, the Defendant argues that "even if Congress had vested the appointment of the Superintendent in the President, a head of department, or a court of law, Jenkins was not so appointed." (ECF No. 64-1 at 24.) The Defendant states that since the Government did not deny this argument it waived and conceded the issue. *Id.* at 25. The Defendant complains about his inability to obtain the hiring procedures that Superintendent Jenkins underwent and then suggests

that if "necessary to decide the Appointments Clause defense, *the Court* should order the paperwork's production." *Id*. at 27 (emphasis added). The Court is not amused by this suggestion.

First, the burden is on the movant proffering the defense to provide what they think is necessary for the Court to determine the issue. This Court – or any court for that matter – is under no obligation to seek-out information outside of the record. That responsibility lies, in this case, with the Defendant.

Second, the Defendant has had since the September 2024, the time Rangers Bellino and Altizer issued the violation notice putting the Compendium at issue, to obtain their desired information in multiple ways. For example, the Defendant could have filed a Freedom of Information Act request with the National Park Service or even subpoenaed the NPS for the information. And if Defendant really thought that the information was within the possession, custody, or control of the Government, a Motion to Compel would have been the appropriate tool. Arguments are not like requests for admissions in civil cases, a failure to deny does not amount to an admission and the movant bears the burden of providing the necessary information. The Defendant has offered no excuse for failing to do so. The movant is to present the information it deems important for the Court to consider, not for the Court to determine what is important and provide it for a party.

Finally, even if the Defendant did obtain that information, it would not change the Court's analysis: the GTNP Superintendent does not wield significant power which is a threshold requirement to be an Officer of the United States subject to the constitutional requirements, and the record as it stands before the Court is insufficient to establish that the Superintendent of Grand Teton National Park is an inferior officer or was improperly appointed. No information has been provided as to how the Superintendent obtained his position. Surely if the Director of the Park

Service can appoint deputy directors who supervise the superintendents they can also choose the superintendent.

In short, the Court does not find the GTNP Superintendent is an inferior officer.

For all the preceding reasons, the Court finds that the Superintendent of Grand Teton National Park is not an Officer subject to the Appointments Clause of the Constitution. Thus Defendant's Motion for Judgment of Acquittal based upon the Appointment's Clause argument is therefore **DENIED**.

### C.    There is No Unconstitutional Delegation to the Secretary of the Interior

The Defendant next asserts that the restriction in the Superintendent's Compendium is void because it "unconstitutionally delegates lawmaking power." (ECF No. 64-1 at 28.) The Defendant argues that only Congress is allowed to make rules and regulations regarding government property and in this instance Congress has passed that duty off to the Secretary of the Interior who has delegated this even further to the NPS.

In the Defendant's Motion to Dismiss, filed pretrial, he raised the non-delegation argument citing much of the same authority as cited here. (ECF No. 33-1 at 13-15.) The Government filed its response to that motion. (ECF No. 37.) Subsequently, on May 1, 2025, the Court heard arguments on the Defendant's motion and issued its ruling at the hearing. The Court found that although neither the Tenth Circuit nor the Supreme Court has addressed this specific nondelegation argument, other courts have.

Specifically, the Court stated that this argument was advanced in *United States v. Brown*, 364 F.3d 1266 (11th Cir. 2004). (ECF No. 66.) The defendant there was charged with violating three National Park Service traffic regulations found in Title 36 of the Code of Federal Regulations. *Brown*, 364 F.3d at 1268. The defendant contended that the regulations were unconstitutional

because they violated the non-delegation doctrine when Congress gave the Secretary rulemaking authority. *Id.* at 1270. The court rejected the Defendant's arguments, nearly identical to Mr. Sunseri's arguments in this case, and found that the "authority to promulgate rules and regulations . . .[was] necessary and proper to effect Congress's stated goal of preserving and managing national parks." *Id.* at 1276.

At the May 1st hearing, the Court also referenced two other lower court cases providing similar rulings. *See United States v. Nieves*, 18-CR-835 (OTW), 2019 WL 1315940, at *1 (S.D.N.Y. Mar. 22, 2019) (finding no unconstitutional delegation to Secretary of Interior (following *Brown*, 364 F.3d 1266 (11th Cir. 2004))); *United States v. Yazzie*, No. 2:22-mj-00557-BNW, 2023 WL 4887562, *1 (D. Nev. 2023) (holding the same). The Defendant has provided no case to the contrary. Hence, the Court denied the Defendant's pretrial Motion to Dismiss based on the non-delegation doctrine.

In response to the current motion, the Government argues that the Defendant is now attempting to take a second bite at the apple, has not set the grounds for this Court to reconsider its earlier ruling and therefore the motion should not be considered and denied. (ECF No. 67 at 9-11.) The Court agrees with the Government.

The Defendant's present motion does not designate this as a motion for reconsideration of the Court's pretrial ruling on the non-delegation issue. Interestingly, the Defendant's motion makes no mention of the fact that this exact same issue has previously been brought in a different motion and ruled on, and he presents no argument regarding why the Court should reconsider its prior ruling. The Defendant's current argument is identical, albeit slightly beefed up, as the pretrial motion. The Court will take this a motion to reconsider its prior ruling.

The "law of the case doctrine" provides that once a court decides upon a rule of law, that law should continue to govern the same issues throughout the case. *United States v. Trent*, 884 F .3d 985, 995 (10th Cir. 2018) (citations omitted). That does not mean, however, that a court cannot reconsider a previous ruling in a case. Although not provided for in the Federal Rules of Criminal Procedure, motions to reconsider are proper in criminal cases. *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014).

There are three circumstances that may warrant the court reconsidering a prior ruling: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). "A motion to reconsider should not be used to revisit issues already addressed or advance arguments that could have been raised earlier." *Id.*

The Defendant has not presented any information that would justify reconsideration of the Court's ruling under any of the three circumstances. He has not presented any intervening change in the controlling law; he has not presented any evidence in support of the motion that was previously unavailable; and he has not demonstrated how the Court's ruling was clear error or a manifest injustice. As stated earlier, the Defendant did not even mention the Court's prior ruling.

As such, this Court finds no grounds to reconsider its earlier ruling. The Defendant's Motion for Judgment of Acquittal based upon the nondelegation doctrine is therefore **DENIED**.

### D. <u>The Defendant's Due Process Rights were not Violated as a Result of Vindictive or Selective Prosecution</u>

The Defendant's next Due Process argument is based upon allegations of selective enforcement and prosecution. This argument was also raised pretrial. (ECF No. 33-1 at 11-2; ECF No. 32.) The Court denied the Motion to Dismiss for selective enforcement as the Defendant had attempted, by way of attached exhibits to the motion, to provide the Court with evidence in the

case which the Court found was not appropriate at the pretrial stage of the proceeding. Instead, the Court denied the motion without prejudice and ruled the motion was more appropriate to consider after evidence was presented at trial. The Court also denied the Motion to Compel because the Defendant had not met his initial burden to obtain discovery regarding selective enforcement. (ECF No. 66.)

At the May 1st hearing, the Defendant stated he was moving to dismiss based upon a challenge of selective enforcement rather than a challenge of selective prosecution. A selective enforcement claim challenges the actions of law enforcement rather than the actions of the prosecutor. *Id*. at 10. In *United States v. Armstrong*, the Supreme Court held that to prove a claim of selective prosecution a defendant must show a discriminatory effect and a discriminatory purpose. *Armstrong*, 51 U.S. 456, 465 (1996). These same factors have been applied to selective enforcement claims. *See e.g.*, *Marshall v. Columbia Lea Reg'l Hosp*., 345 F.3d 1157, 1168 (10th Cir. 2003); *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006).

1. *Defendant's Selective Enforcement Argument.*

To prove his selective enforcement claim, the Defendant must show that a similarly situated individual could have been, but was not, stopped or arrested or charged for the same offense. *See Marshall*, 345 F.3d at 1168 (citing *Armstrong*, 517 U.S. at 465). Here, that would require the Defendant to show that other individuals had shortcut this same trail using the Old Climber's Trail, were then caught by law enforcement and not cited. Further, the Defendant would have to show that the reason he was prosecuted in this case was for a discriminatory purpose because of Mr. Sunseri's social media statements. *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006)*.* The standard for proving selective enforcement is also a "demanding one." *Id.* (citing *Marshall*, 345 F.3d at 1167.)

In this case, the Defendant runs into issues proving selective enforcement. Defendant presented some testimony at trial that the Old Climber's Trail had historically been used by others including those who had set previous records using the shortcut, like Kilian Jornet in 2012. He also presented some evidence that no one else had ever been cited for using the trail. This argument fails for a couple of reasons.

First, the information before the Court is that this regulation was not in the Compendium until 2022. (*See* ECF Nos. 68-1, 68-2, 69-3, 68-4, 68-5, 68-6.) Prior to this time, shortcutting this trail was not prohibited because the restriction is not in effect until the superintendent has acted through the compendium. Any use of the trail prior to 2022 was not illegal and no charges could have been initiated by law enforcement. No evidence was presented to this Court that the trail was used from 2022 forward. Defendant claims "thousands of public uses" (ECF No. 64-1 at 24), but absolutely no evidence has been presented to the Court to remotely substantiate that wild claim.

Rather, the testimony by the two rangers involved in the decision to issue this citation, Rangers Bellino and Altizer, was that they had never before personally witnessed anyone using that shortcut. Ranger Altizer had only heard of one instance of a climbing guide using the trail and non-law enforcement personnel had witnessed that and talked to the individual. Ranger Belino testified that he had never cited anyone for using the Old Climber's Trail to shortcut the Garnet Canyon Trail in the ten years he has been employed as a law enforcement ranger in Grand Teton National Park. Ranger Bellino testified that over the years he had been told of other individuals being cited for using that shortcut, but he did not have any specific knowledge of any circumstances because he himself has never witnessed anyone using it.

These facts simply do not support an allegation of selective enforcement. Both rangers testified that the alleged violation in this case against Defendant is the only time in their careers

that they have been involved in an investigation of an individual using that shortcut. There is no evidence that the rangers involved have failed to enforce this regulation against others, much less against others who did not make social media posts.

    *2. Defendant's Selective or Vindictive Prosecution Argument.*

   The Defendant's charges in his motion claiming selective or vindictive prosecution are new and also are alleged in the Defendant's Motion to Admit New Evidence and Conduct Evidentiary Hearing. (ECF No. 54.) The Court addressed these arguments in its Order Denying the Motion and Request for Hearing. (ECF No. 73.)

    *3. Defendant's Plea Bargain Argument.*

   Defendant makes a fleeting reference that "after declining a guilty plea in favor of trial, Mr. Sunseri faced continued disproportionate penalties . . ." (ECF No. 64-1 at 25.) This Defendant has always faced the exact same potential penalties in this case. These potential penalties – originally explicated to him at his arraignment – are up to six months in jail, up to a $5,000 fine, a $10 special assessment fee and a $30 court processing fee, up to five years of probation and restitution if applicable. These potential penalties are set by statute and do not vary based upon whether or not a person pleads guilty or not guilty. And the Court is the one to impose any final penalty, not the Government.

   At the arraignment, the Government stated it would not be seeking a jail sentence in Defendant's case and the Court agreed that a jail sentence would not be imposed. That is the only change to the potential penalties Mr. Sunseri has faced in the case. The Defendant's true complaint seems to be that the Government indicated that it would seek a harsher sentence in the Defendant's case if the Defendant decided to go to trial.

The United States Supreme Court has long recognized that the plea bargain process resulting in a guilty plea is an "important component" of the criminal justice system. *Bordenkircher v. Hayes*, 434 U.S. 357, 361 (1978) (quoting *Blackledge v. Allison*, 431 U.S. 63, 71 (1974)). The plea-bargaining process is a means whereby both parties can avoid trial for whatever reasons. It is a voluntary act on the part of a defendant, particularly when a defendant is advised by counsel. *Id.* at 363. A defendant is often willing to take a plea-bargain offer by the promise of a more lenient sentence. This is entirely permissible. *Id.* at 364. If not permitted to offer a more lenient sentence, the prosecutor would have little bargaining power.

Here, Defendant has cited no authority that a prosecutor may not seek a harsher sentence if a plea bargain is rejected. Based on that and the above, the Court **DENIES** Defendant's Motion for a Judgment of Acquittal on the basis of vindictive or selective prosecution.

## IV.

Based on the forgoing reasons, the Court **DENIES** Defendant's Motion for a Judgment of Acquittal.

Dated this 2d day of September 2025.

*Stephanie Hambrick*
_____

Honorable Stephanie A. Hambrick
United States Magistrate Judge

22